UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

FILED

FEB 27 2019

U.S. CLERK'S OFFICE
EVANSVILLE, INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:18-cr-00080-RLY-MPB |
| | ) | |
| JACOB BESHEAR, | ) | -01 |
| CRYSTAL VIDAL, | ) | -02 |
| JOSHUA CARR, | ) | -03 |
| DAVID WARGEL, | ) | -04 |
| CIARA WARGEL, | ) | -05 |
| MATTHEW HUNTER BENNETT, | ) | -06 |
| LAURYN SMITH, | ) | -07 |
| AUSTIN DAVIS, | ) | -08 |
| MADISON BROWN, | ) | -09 |
| and | ) | |
| ABIGAIL SHIPLEY, | ) | -10 |
| Defendants. | ) | |

## SUPERSEDING INDICTMENT

### COUNT ONE

[21 U.S.C. § 846 – Conspiracy to Distribute Fentanyl]

The Grand Jury charges that:

Beginning on a date unknown to the Grand Jury, but at least as early as April 19, 2018,

and continuing up to and through December 13, 2018, in the Southern District of Indiana,

JACOB BESHEAR, CRYSTAL VIDAL, JOSHUA CARR, DAVID WARGEL, CIARA

WARGEL, MATTHEW HUNTER BENNETT, LAURYN SMITH, AUSTIN DAVIS,

MADISON BROWN, and ABIGAIL SHIPLEY, defendants herein, did knowingly conspire

together and with diverse other persons, known and unknown to the Grand Jury, to possess with

the intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule I Narcotic Controlled Substance as set forth in this Superseding Indictment.

## OBJECT OF THE CONSPIRACY

1.      The participants in the conspiracy sought to enrich themselves through the distribution and sale of fentanyl and to acquire tangible and intangible benefits from the use, possession, distribution, and sale of fentanyl in the Southern District of Indiana.

## MANNER AND MEANS

2.      JACOB BESHEAR was a leader of the conspiracy supplying large quantities of fentanyl he acquired from JOSHUA CARR (CARR) and/or CRYSTAL VIDAL (VIDAL) to distributors, including but not limited to, DAVID WARGEL (D. WARGEL), CIARA WARGEL (C. WARGEL), MATTHEW HUNTER BENNETT (BENNETT), LAURYN SMITH (SMITH), AUSTIN DAVIS (DAVIS), MADISON BROWN (BROWN), and ABIGAIL SHIPLEY (SHIPLEY), operating in Vanderburgh County, Indiana and surrounding areas.   These distributors would then dispense the fentanyl to lower-level distributors and users.

2.      VIDAL was a leader of the conspiracy and the source of supply of the fentanyl possessed and distributed by the members of the conspiracy.

3.      CARR was a leader of the conspiracy supplying large quantities of fentanyl he acquired from VIDAL to distributors, including but not limited to, BESHEAR and D. WARGEL, operating in Vanderburgh County, Indiana and surrounding areas.   These distributors would then dispense the fentanyl to lower-level distributors and users.

4.      Throughout the conspiracy, several members of the conspiracy distributed the fentanyl on a "front," wherein they provided quantities of fentanyl on consignment to other

fentanyl distributors, receiving payment for the consigned fentanyl after its sale.

5.     The defendants used telephones to facilitate the fentanyl trafficking operation outlined herein.   During the course of the conspiracy, the defendants spoke on telephones, at times using code language, and used text messages to discuss matters relative to their fentanyl trafficking operation.

6.     The defendants also used electronic applications, social media, and messenger applications to facilitate the fentanyl trafficking operation outlined herein.   The defendants used electronic communication methods to discuss matters relative to their fentanyl trafficking operation and to transfer United States currency constituting the proceeds of the sale of fentanyl.

7.     The defendants used motor vehicles to transport fentanyl and United States currency constituting the proceeds of the sale of fentanyl to and from areas in and around Phoenix, Arizona and areas in and around Evansville, Indiana.

8.     The defendants used parcel shipping services to deliver fentanyl from Arizona to the Evansville, Indiana area.

9.     Members of the conspiracy maintained sizeable amounts of cash to obtain quantities of fentanyl or to pay for fentanyl previously provided on consignment.

**OVERT ACTS**

In furtherance of the conspiracy and to accomplish the object of the conspiracy, that is to possess with the intent to distribute and to distribute methamphetamine, the members of the conspiracy did commit, among others, the following overt acts:

1.     On or about April 30, 2018, BESHEAR transferred United States currency to CARR and CARR caused fentanyl to be distributed to BESHEAR;

3

2.      On or about July 8, 2018, D. WARGEL and/or BESHEAR transferred United States currency to CARR and CARR caused fentanyl to be distributed to WARGEL and/or BESHEAR;

3.      On or about August 15-16, 2018, BESHEAR and/or D. WARGEL transferred United States currency to CARR and/or VIDAL, and CARR and/or VIDAL caused fentanyl to be distributed to BESHEAR and/or WARGEL;

4.      On or about August 22, 2018, BESHEAR transferred United States currency to VIDAL, and VIDAL caused fentanyl to be distributed to BESHEAR;

5.      On or about August 29, 2018, BESHEAR transferred United States currency to VIDAL, and VIDAL caused fentanyl to be distributed to BESHEAR;

6.      On or about September 3, 2018, BESHEAR transferred United States currency to VIDAL, and VIDAL caused fentanyl to be distributed to BESHEAR;

7.      On or about September 13, 2018, CARR possessed fentanyl in New Mexico with the intent to distribute the fentanyl to BESHEAR in the Southern District of Indiana.

8.      On or about September 18, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

9.      On or about September 22, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

10.     On or about October 2, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

11.     On or about October 9, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

12.     On or about October 20-21, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

13.     On or about October 27-29, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

14.     On or about November 5, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

15.     On or about November 11, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

16.     On or about between November 18, 2018 and December 7, 2018, BESHEAR paid and/or attempted to pay VIDAL United States currency for the purchase of fentanyl using a digital money transfer application;

17.     On or about November 20, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

18.     On or about between August 19, 2018 and December 11, 2018, BESHEAR and C. WARGEL exchanged multiple phone, message, and/or social media communications regarding BESHEAR distributing fentanyl to C. WARGEL.

19.     On or about between October 24, 2018 and December 1, 2018, BESHEAR and D. WARGEL exchanged multiple phone, message, and/or social media communications regarding BESHEAR distributing fentanyl to D. WARGEL;

20.     On or about between October 24, 2018 and December 1, 2018, BESHEAR and C. WARGEL exchanged multiple phone, message, and/or social media communications regarding BESHEAR distributing fentanyl to C. WARGEL

21.     On or about between November 27, 2018 and December 1, 2018, D. WARGEL paid and/or attempted to pay BESHEAR United States currency for the purchase of fentanyl using the digital money transfer application;

22.     On or about November 29, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

23.     On or about December 6, 2018, BESHEAR transferred United States currency to VIDAL and/or others known to the Grand Jury, and VIDAL caused fentanyl to be distributed to BESHEAR;

24.     On or between June 28, 2018 and August 28, 2018, D. WARGEL and BENNETT had multiple phone, message, and/or social media communications regarding D. WARGEL distributing fentanyl to BENNETT;

25.     On or between June 28, 2018 and August 28, 2018, C. WARGEL and BENNETT had multiple phone, message, and/or social media communications regarding D. WARGEL distributing fentanyl to BENNETT;

26.     On or about June 28, 2018, D. WARGEL and/or C. WARGEL distributed fentanyl to BENNETT;

27.     On or about August 20, 2018, D. WARGEL and/or C. WARGEL distributed fentanyl to BENNETT;

28.     On or about August 22, 2018, D. WARGEL and/or C. WARGEL distributed fentanyl to BENNETT;

29.     On or about June 28, 2018, August 20, 2018, and/or August 22, 2018, BENNETT possessed with the intent to distribute fentanyl;

30.     On or about between August 24, 2018 and October 12, 2018, D. WARGEL and SMITH had multiple phone, message, and/or social media communications regarding D. WARGEL distributing fentanyl to BENNETT;

31.     On or about between August 24, 2018 and October 12, 2018, C. WARGEL and SMITH had multiple phone, message, and/or social media communications regarding C. WARGEL distributing fentanyl to BENNETT;

32.     On or about August 29, 2018, D. WARGEL and/or C. WARGEL distributed fentanyl to SMITH;

33.　　On or about October 11, 2018, D. WARGEL and/or C. WARGEL distributed fentanyl to SMITH;

34.　　On or about August 29, 2018 and/or October 11, 2018, SMITH possessed with the intent to distribute fentanyl;

35.　　On or about September 29, 2018 and September 30, 2018, DAVIS and D. WARGEL had phone, message, and/or social media communications regarding DAVIS distributing fentanyl to D. WARGEL;

36.　　On or about September 30, 2018, DAVIS distributed fentanyl to D. WARGEL;

37.　　On or about between November 16, 2018 and November 19, 2018, BESHEAR and DAVIS had phone, message, and/or social media communications regarding BESHEAR distributing fentanyl to DAVIS;

38.　　On or between November 23, 2018 and November 30, 2018, BESHEAR and BROWN had phone, message, and/or social media communications regarding BESHEAR distributing fentanyl to BROWN;

39.　　On or about November 25, 2018, BROWN distributed fentanyl to SHIPLEY and/or others known to the Grand Jury;

40.　　On or about December 1, 2018, BESHEAR distributed fentanyl to D. WARGEL;

41.　　On or about December 1, 2018, D. WARGEL possessed with the intent to distribute fentanyl;

42.　　On or about December 11, 2018, SHIPLEY transferred United States currency to BESHEAR, and BESHEAR caused fentanyl to be distributed to SHIPLEY;

43.     On or about December 11, 2018, SHIPLEY possessed with the intent to distribute fentanyl;

All of which is in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846.

## COUNT TWO

[18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h)-Money Laundering Conspiracy]

The Grand Jury further charges that:

Beginning on a date unknown to the Grand Jury, but at least as early as September 8, 2018, and continuing up to and through December 6, 2018, in the Southern District of Indiana, and elsewhere, CRYSTAL VIDAL and JACOB BESHEAR, defendants herein, did knowingly conspire together and with diverse other persons known and unknown to the Grand Jury to conduct, attempt to conduct, or cause to be conducted, financial transactions affecting interstate commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, which transactions in fact involved the proceeds of specified unlawful activity, that is, trafficking in controlled substances, and that the transactions were designed in whole or in part to conceal or disguise the nature, source, ownership, or control of the proceeds.

All of which is in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956(h).

## COUNT THREE

[18 USC §922(a)(6) and 2- Make Materially False Statement in Connection with Acquisitions of Firearms – Straw Purchase]

On or about November 26, 2018, in the Southern District of Indiana, JACOB BESHEAR and DAVID WARGEL, defendants herein, in connection with the acquisition of firearms, specifically (1) a German Sports Gun, model Firefly, .22 caliber pistol, serial number F406979, and (2) a Springfield Armory, model XDS, .40 caliber pistol, bearing serial number S3530485, from an Evansville, Indiana Rural King, a federally licensed dealer in firearms, knowingly made false and fictitious oral and written statements likely to deceive such dealer with respect to a material fact as to the lawfulness of the sale of the firearms, and aided and abetted each other in so doing, to wit: JACOB BESHEAR and DAVID WARGEL entered the Rural King together and selected two firearms to purchase, and DAVID WARGEL prepared a Department of Justice, Bureau of Alcohol, Tobacco and Firearms Form 4473, stating that he was the actual buyer of the firearms, when in fact JACOB BESHEAR was the actual buyer of the firearms.

All of which is a violation of Title 18, United States Code, Sections 922(a)(6) and 2.

## COUNT FOUR

[18 USC §922(a)(6)- Make Materially False Statement in Connection with Acquisitions of Firearms – Straw Purchase]

On or about November 25, 2018, in the Southern District of Indiana, MADISON BROWN, defendant herein, in connection with the attempted acquisition of a firearm, specifically a Springfield Armory, model XDS, .40 caliber pistol, bearing serial number S3530485, from an Evansville, Indiana Rural King, a federally licensed dealer in firearms, knowingly made false and fictitious oral and written statements likely to deceive such dealer

10

with respect to a material fact as to the lawfulness of the sale of the firearms, to wit: MADISON

BROWN stated on a Department of Justice, Bureau of Alcohol, Tobacco and Firearms Form

4473, that she was the actual buyer of the firearm named in the 4473 Form, when in fact

MADISON BROWN was not the actual intended buyer of the firearm.

All of which is a violation of Title 18, United States Code, Section 922(a)(6).

## FORFEITURE

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, the United States hereby

gives the defendants notice that the United States will seek forfeiture of property, criminally

and/or civilly, pursuant to Title 18, United States Code, Sections 924(d), Title 21, United States

Code, Sections 853 and 881, and Title 28, United States Code, Section 2461(c), as part of any

sentence imposed.

2.      Pursuant to Title 21, United States Code, Section 853, if convicted of the offense

set forth in Count 1 and/or Count 2 of the Indictment, the defendants shall forfeit to the United

States any and all property constituting or derived from any proceeds the defendant obtained

directly or indirectly as a result of the offense, and any and all property used or intended to be

used in any manner or part to commit and to facilitate the commission of the offense.

3.      Pursuant to Title 18, United States Code, Section 924(d), if convicted of the

offense set forth in Count 3 and/or Count 4 of the Indictment, the defendants shall forfeit to the

United States "any firearm or ammunition involved in or used in" the offense.

4.      The property subject to forfeiture includes, but is not necessarily limited to, the

following:

a.   one German Sports Gun, model Firefly, .22 caliber pistol, serial number F406979;

b.   one Springfield Armory, model XDS, .40 caliber pistol, bearing serial number S3530485; and

c.   all ammunition found with the firearms.

5.      The United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), and as incorporated by Title 28, United States Code, Section 2461(c), if any of the property described above in paragraph 4, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property, which cannot be divided without difficulty.

6.      In addition, the United States may seek civil forfeiture of the property described

above in paragraph 4 pursuant to Title 18, United States Code, Section 924(d), Title 21, United

States Code, Section 881(a), and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

JOSH J. MINKLER
United States Attorney

By:  _____
Frank E. Dahl, III
Assistant United States Attorney

13